IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| NATHANIEL CLAY, <br> No. 30307-424, <br><br> Petitioner, <br><br> vs. <br><br> DAN SPROUL, <br><br> Respondent. | ) <br> ) <br> ) <br> ) <br> ) <br> ) Case No. 3:19-cv-1241-GCS[1] <br> ) <br> ) <br> ) <br> ) |

## MEMORANDUM AND ORDER

**SISON, Magistrate Judge:**

Petitioner Nathaniel Clay, a federal prisoner incarcerated at USP-Marion, filed a *pro se* Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241. (Doc. 1). He invokes *Mathis v. United States*, -- U.S. --, 136 S. Ct. 2243 (2016), to argue that the Government improperly cited his Illinois drug convictions as prior felony drug convictions to subject him to a mandatory life sentence for his federal drug conviction under 21 U.S.C. §§ 841(a)(1), (b)(1)(A) and 851. He was not, however, subject to the increased penalty at sentencing because he pleaded guilty and the Government dismissed the Section 851 Notice. As relief, Clay seeks to withdraw his guilty plea. He does not contend that he is innocent of the federal crime. Respondent filed a Response to the Petition. (Doc. 14). Clay filed a Reply. (Doc. 16).

---

[1] This case was assigned to the undersigned for final disposition upon consent of the parties pursuant to 28 U.S.C. § 636(c). (Doc. 9).

**RELEVANT FACTS AND PROCEDURAL HISTORY**

In December 2009, Clay was named along with fourteen other defendants in a second superseding indictment in the Northern District of Illinois, *United States v. Clay*, 09-cr-50041-6.  In Count One, Clay was charged with conspiracy to possess with intent to distribute and to distribute more than one kilogram of heroin and more than 50 grams of cocaine base in violation of 18 U.S.C. § 841(a)(1).  In Count Three, Clay was charged with possession with intent to distribute heroin.  *See* Second Superseding Indictment, Doc. 14, Ex. 2.

In June 2010, the United States filed a notice pursuant to 21 U.S.C. § 851 alleging prior convictions:

> 1. On or about January 15, 1989, defendant was convicted of manufacture or delivery of a controlled substance in the Circuit Court of Cook County and sentenced to 3 years' imprisonment.
>
> 2. On or about July 22, 1992, defendant was convicted of manufacture or delivery of a controlled substance in the Circuit Court of Cook County and sentenced to 3 years' imprisonment.
>
> 3. On or about September 1, 1995, defendant was convicted of manufacture or delivery of a controlled substance in the Circuit Court of Cook County and sentenced to serve 3 years' imprisonment.

(Doc. 14, Ex. 3).[2]  Clay did not file an objection or other response to the Notice.

In July 2010, Clay and the Government entered into a written plea agreement under Federal Rule of Criminal Procedure 11(c)(1)(A).  (Doc. 14-4).  Clay agreed to plead

---

[2] At that time, 21 U.S.C. § 841(b)(1)(A)(1) provided, in relevant part, "If any person commits a violation of this subparagraph or of section 849, 859, 860, or 861 of this title after two or more prior convictions for a felony drug offense have become final, such person shall be sentenced to a mandatory term of life imprisonment without release and fined in accordance with the preceding sentence."

guilty to Count One, and the Government agreed to dismiss Count Three and the Section 851 Notice. The agreement recited that Clay was in fact guilty of the offense charged in Count One and that he was subject to a statutory minimum sentence of ten years and a maximum of life imprisonment. (Doc. 14-4, ¶¶ 6, 7). The agreement provided that Clay reserved the right to appeal the validity of the plea and the sentence imposed. (Doc. 14-4, ¶17.b).

The Presentence Investigation Report ("PSR") is located at Doc. 14-10. Clay's criminal history included convictions in two separate cases in Cook County, Illinois, for delivery of less than one gram of cocaine in July 1992 and for possession with intent to distribute less than one gram of cocaine in 1995. He was sentenced to three years imprisonment on each of those convictions. (Doc. 14-10, p. 16). In June 1989, Clay was convicted of one count of possession of cocaine and sentenced to probation. (Doc. 14-10, p. 14).

Clay filed objections to the PSR. He objected to the inclusion in his criminal history of arrests that did not result in convictions, but he did not dispute the accuracy of the convictions described above. (Doc. 14-6, p. 9).

In November 2010, Clay was sentenced to a term of imprisonment of 320 months. (Doc. 14-1). On direct appeal, Clay challenged the amount of heroin attributed to the conspiracy and argued that the sentencing court failed to consider disparities in the sentences of his co-conspirators. On February 1, 2013, the Seventh Circuit affirmed. (Doc. 14-8). Clay did not file a motion under 28 U.S.C. § 2255.

### GROUNDS FOR HABEAS RELIEF

Clay argues that, after *Mathis v. United States*, 136 S. Ct. 2243 (2016), *United States v. Elder*, 900 F.3d 491 (7th Cir. 2018), and *Najera-Rodriguez v. Barr*, 926 F.3d 343 (7th Cir. 2019), reh'g denied (Aug. 23, 2019), his Illinois drug convictions no longer qualify as prior felony drug offenses. He asserts that his guilty plea is invalid because it was induced by the threat of a mandatory life sentence, but *Mathis*, *Elder*, and *Najera-Rodriguez* are ultimately of no assistance to Clay and do not warrant the granting of habeas relief.

### APPLICABLE LEGAL STANDARDS

Generally, petitions for writ of habeas corpus under 28 U.S.C. § 2241 may not be used to raise claims of legal error in conviction or sentencing, but are instead limited to challenges regarding the execution of a sentence. *See Valona v. United States*, 138 F.3d 693, 694 (7th Cir. 1998). Thus, aside from the direct appeal process, a prisoner who has been convicted in federal court is generally limited to challenging his conviction and sentence by bringing a motion pursuant to 28 U.S.C. § 2255 in the court which sentenced him. A Section 2255 motion is ordinarily the "exclusive means for a federal prisoner to attack his conviction." *Kramer v. Olson*, 347 F.3d 214, 217 (7th Cir. 2003). A prisoner is also normally limited to only *one* challenge of his conviction and sentence under Section 2255. He or she may not file a "second or successive" Section 2255 motion unless a panel of the appropriate court of appeals certifies that such motion contains either (1) newly discovered evidence "sufficient to establish by clear and convincing evidence that no reasonable factfinder would have found the movant guilty of the offense," or (2) "a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme

Court, that was previously unavailable." 28 U.S.C. § 2255(h).

Under very limited circumstances, however, it is possible for a prisoner to challenge his federal conviction or sentence under Section 2241. Specifically, Section 2255(e) contains a "savings clause" which authorizes a federal prisoner to file a Section 2241 petition where the remedy under Section 2255 is "inadequate or ineffective to test the legality of his detention." 28 U.S.C. § 2255(e). *See also Hill v. Werlinger*, 695 F.3d 644, 648 (7th Cir. 2012)(stating that "'[i]nadequate or ineffective' means that 'a legal theory that could not have been presented under § 2255 establishes the petitioner's actual innocence.'")(citing *Taylor v. Gilkey*, 314 F.3d 832, 835 (7th Cir. 2002)); *United States v. Prevatte*, 300 F.3d 792, 798-799 (7th Cir. 2002)(noting that "savings clause" of Section 2255 applies to "a narrow class of cases" where the 2255 remedy "'is inadequate or ineffective to test the legality of [the prisoner's] detention.'"). The Seventh Circuit construed the savings clause in *In re Davenport*, 147 F.3d 605 (7th Cir. 1998) and stated: "[a] procedure for postconviction relief can be fairly termed inadequate when it is so configured as to deny a convicted defendant *any* opportunity for judicial rectification of so fundamental a defect in his conviction as having been imprisoned for a nonexistent offense." *Id.* at 611. In other words, "there must be some kind of structural problem with section 2255 before section 2241 becomes available." *Webster v. Daniels*, 784 F.3d 1123, 1136 (7th Cir. 2015).

Following *Davenport* and its progeny, the Seventh Circuit developed a three-part test for determining whether Section 2255 is inadequate or ineffective so as to trigger the savings clause:

- Step #1: the federal prisoner must seek relief based on a decision of statutory

interpretation (as opposed to a decision of constitutional interpretation, which the inmate could raise in a second or successive § 2255 motion);

• Step #2: the statutory rule of law in question must apply retroactively to cases on collateral review *and* could not have been invoked in a first § 2255 motion; and

• Step #3: a failure to afford the prisoner collateral relief would amount to an error "grave enough" to constitute "a miscarriage of justice."

*Worman v. Entzel*, 953 F.3d 1004, 1008 (7th Cir. 2020) (emphasis in original).

## ANALYSIS

The applicable version of 21 U.S.C. § 841(b)(1)(A)(1) mandated a life sentence for a defendant who had two or more "prior convictions for a felony drug offense." Section 802(44) defines "felony drug offense" as "an offense that is punishable by imprisonment for more than one year under any law of the United States or of a State or foreign country that prohibits or restricts conduct relating to narcotic drugs, marihuana, anabolic steroids, or depressant or stimulant substances." 21 U.S.C. § 802(44). "Narcotic drugs" include "Opium, opiates, derivatives of opium and opiates" and "Cocaine, its salts, optical and geometric isomers, and salts of isomers." 21 U.S.C. §§ 802 (17)(A) and (D).

Clay argues that he should not have been exposed to the life-sentence enhancement because the Illinois Controlled Substances Act, 720 ILCS § 570/401, is broader than the federal definition of a felony drug offense. The Illinois Act includes salvinorin A, salvia divinorum, and diacetyldihydromorphine, but the federal definition does not. (Doc. 1, p. 10). He also argues that Illinois defines cocaine to include positional isomers as well as optical and geometric isomers, but the federal definition does not. (Doc. 1, p. 12).

Neither the Section 851 Notice nor the PSR specified the Illinois statute or statutes under which Clay was convicted, but the parties agree that it was some subsection of 720 ILCS § 570/401, which prohibits manufacture, delivery, or possession with intent to manufacture or deliver, controlled substances. Controlled substances include drugs in Schedules I and II. *See* 720 ILCS § 570/102(f). Schedule I (§ 570/204) lists drugs such as salvinorin A and salvia divinorum that are not covered by the federal definition. Schedule II (§ 570/206) defines cocaine in subsection (b)(4) to include optical, positional and geometric isomers.

Clay contends that he was convicted of violating subsection (d) of Section 570/401, which seems likely. Subsections (a), (b) and (c) identify specific controlled substances and amounts, while subsection (d) is a "catch-all" provision for any drug amount not listed in another section of the statute. The PSR indicates that Clay's 1992 and 1995 convictions involved less than one gram of cocaine, and subsections (a), (b) and (c) all specify at least one gram of cocaine.[3]

The Seventh Circuit has held that 720 ILCS § 570/402(c) is indivisible and that Illinois criminalizes drugs that are not covered by the federal definition. *See Najera-Rodriguez v. Barr*, 926 F.3d 343, 352 (7th Cir. 2019), reh'g denied (Aug. 23, 2019). Section 570/402 is the possession statute, and it is structured the same as the manufacture and delivery statute. For example, similar to Section 570/401(d), Section 570/402(c) is a "catch-all" provision for any drug amount not listed in another section of the statute. *Id.*

---

[3] The Section 851 Notice also alleged a 1989 conviction for manufacture or delivery of a controlled substance. That conviction was not listed in the PSR. Neither party has addressed the discrepancy.

at 351.  However, because *Najera-Rodriguez* was decided on direct appeal rather than on collateral review, it does not resolve all the issues presented here.  *See, e.g., Hawkins v. United States*, 706 F.3d 820, 824 (7th Cir. 2013)(noting that given the strong interest in finality, there is a difference in reversing an error on appeal versus correcting the error years later in a postconviction proceeding).

Clay's argument appears to be valid, at least in part.  The Illinois Controlled Substances Act does include salvinorin A and salvia divinorum, and those substances are not covered by the federal definition.  Illinois facially defines cocaine more broadly than the federal definition, but Clay offers no authority that the omission of positional isomers from the federal definition has any real-world effect.  His argument is incorrect with respect to diacetyldihydromorphine, though, because diacetyldihydromorphine is an opiate derivative.  *See* www.bionity.com/en encyclopedia/Diacetyldihydromorphine. html (last visited on May 19, 2020).  Opiate derivatives are included in the federal definition of a narcotic drug.  *See* 21 U.S.C. § 802(17)(A).  In any event, while the argument might be correct in part, it does not entitle Clay to habeas relief in his Section 2241 Petition, because he cannot meet all of the *Davenport* requirements.

For the first savings clause factor, Clay invokes *Mathis v. United States*, 136 S. Ct. 2243 (2016), as a new rule of statutory construction that was previously unavailable to him.  Clay relies on *Mathis* for the proposition that a prior conviction does not qualify as the generic form of a predicate violent felony offense if an element of the crime of conviction is broader than an element of the generic offense.  In *Mathis*, the issue involved whether a prior conviction qualified as a predicate violent felony offense for purposes of

the 15-year mandatory minimum enhancement under the Armed Career Criminal Act. Clay clearly seeks to rely on *Mathis* by analogy because as explained above, Clay argues that his prior offenses should not count because Illinois law defines cocaine more broadly than federal law. Thus, Clay satisfies the first savings clause factor because *Mathis* is a case of statutory, rather than constitutional construction. *See Holt v. United States*, 843 F.3d 720, 722 (7th Cir. 2016).

As to the second *Davenport* requirement, Respondent argues that Clay could have brought a timely Section 2255 motion within one year of the *Mathis* decision. (Doc. 14, p. 5). That is incorrect. The Seventh Circuit has held that *Mathis* is not a new rule which starts a one-year filing period under Section 2255(f)(3). *See Hanson v. United States*, 941 F.3d 874, 877 (7th Cir. 2019). In some circumstances, a Section 2241 petitioner may be able to show that his or her *Mathis* claim was previously unavailable, thus satisfying the second savings clause factor. *See, e.g., Chazen v. Marske*, 938 F.3d 851, 863 (7th Cir. 2019)(noting that petitioner satisfied the "prior unavailability" condition because his claim had clearly been foreclosed by the law in his circuit of conviction at the time he might have raised it in a Section 2255 motion). In Clay's case, however, it is unnecessary to determine whether his drug definition argument was previously foreclosed to him, because he cannot satisfy the third *Davenport* requirement – a showing that his conviction or sentence represents a miscarriage of justice.

The third *Davenport* requirement is satisfied by demonstrating "so fundamental a defect in [a] conviction as having been imprisoned for a nonexistent offense." *In re Davenport*, 147 F.3d at 611. The Seventh Circuit has also described a miscarriage of justice

as "the possibility that the convictions hinged on conduct Congress never intended to criminalize." *Kramer v. Olson*, 347 F.3d 214, 218 (7th Cir. 2003). A miscarriage of justice may also occur where a defendant is sentenced under an erroneous mandatory sentencing range, but not where the error affects only the advisory Sentencing Guidelines. *See Hawkins*, 706 F.3d at 823-824.

Clay does not argue that he was convicted of a nonexistent offense or that he is innocent of the offense to which he pled guilty. He testified at the change of plea hearing that he committed the offense charged in Count One. (Doc. 14-5, p. 23). He claims only that he was induced to plead guilty by the threat of the life sentence represented by the Section 851 Notice. That does not demonstrate a miscarriage of justice.

Clay argues, incorrectly, that his mandatory minimum sentence was increased because of the Section 851 Notice and his plea was invalid because he was not informed of the correct minimum and maximum sentences. (Doc. 1, pp. 13-16; Doc. 16, pp. 16-18). But, the mandatory minimum was not increased by the filing of the Section 851 Notice. This is because the Section 851 Notice was dismissed by the Government, and thus, it had no effect on Clay's sentence. At the Change of Plea Hearing, the judge correctly informed Clay that he was subject to a mandatory minimum sentence of ten years and a maximum of life imprisonment. (Doc. 14-5, pp. 11-12). The sentencing range was correct under the version of 21 U.S.C. § 841(b)(1)(A)(i) then in effect because the offense involved one kilogram or more of a mixture or substance containing a detectable amount of heroin. The Plea Agreement also set out the correct mandatory minimum and maximum sentences. (Doc. 14-4, p. 4).

Clay also argues that his plea is invalid because it was coerced by the threat of a life sentence. That argument, however, is foreclosed by *Brady v. United States*, 397 U.S. 742 (1970). In *Brady*, the Supreme Court stated that "a voluntary plea of guilty intelligently made in the light of the then applicable law does not become vulnerable because later judicial decisions indicate that the plea rested on a faulty premise." *Id.* at 757. Here, Clay clearly proceeds from the faulty premise that the filing of a Section 851 notice subjected him to a mandatory life sentence. However, the mere filing of the Section 851 Notice did not create a certainty that Clay would be subject to a mandatory life sentence. For example, Clay could have challenged the Notice but did not.[4] *See* 21 U.S.C. § 851(c). More importantly, the judge in his case never decided whether his prior convictions qualified as prior felony drug convictions because the Section 851 Notice was dismissed. Clay apparently assumed that his prior convictions did qualify, but a defendant's mistake about his potential sentence does not invalidate a guilty plea. *See United States v. Redmond*, 667 F.3d 863, 872 (7th Cir. 2012); *United States v. Bowlin*, 534 F.3d 654, 660 (7th Cir. 2008).

---

[4]      Clay also relies on *United States v. Elder*, 900 F.3d 491 (7th Cir. 2018) to support his claim for habeas relief.  In *Elder*, the defendant was subjected to a mandatory term of life imprisonment due to having two prior "felony drug offense" convictions.  The Seventh Circuit, however, agreed with the defendant that one of the predicate convictions was not a "felony drug offense" within the meaning of 21 U.S.C. § 802(44). However, *Elder* is of no assistance to Clay as the defendant in *Elder* challenged his prior convictions by filing a motion to dismiss the Section 851 Notice.  And, more importantly, the defendant in *Elder* was subjected to a mandatory life sentence because of the filing of the Section 851 Notice, whereas here, Clay was not subjected to such a sentence because the Section 851 Notice was dismissed.

CONCLUSION

For the reasons set forth above, Nathaniel Clay's Petition for Writ of Habeas Corpus under 28 U.S.C. § 2241 (Doc. 1) is **DENIED**. This action is **DISMISSED WITH PREJUDICE**, and the Clerk of Court is **DIRECTED** to enter judgment accordingly.

If Petitioner wishes to appeal the dismissal of this action, his notice of appeal must be filed with this Court within 60 days of the entry of judgment. *See* FED. R. APP. PROC. 4(a)(1)(B8). A motion for leave to appeal in forma pauperis ("IFP") must set forth the issues Petitioner plans to present on appeal. *See* FED. R. APP. PROC. 24(a)(1)(C). If Petitioner does choose to appeal and is allowed to proceed IFP, he will be liable for a portion of the $505.00 appellate filing fee (the amount to be determined based on his prison trust fund account records for the past six months) irrespective of the outcome of the appeal. *See* FED. R. APP. PROC. 3(e); 28 U.S.C. § 1915(e)(2); *Ammons v. Gerlinger*, 547 F.3d 724, 725–726 (7th Cir. 2008); *Sloan v. Lesza*, 181 F.3d 857, 858–859 (7th Cir. 1999); *Lucien v. Jockisch*, 133 F.3d 464, 467 (7th Cir. 1998). A proper and timely motion filed pursuant to Federal Rule of Civil Procedure 59(e) may toll the 60-day appeal deadline. *See* FED. R. APP. PROC. 4(a)(4). A Rule 59(e) motion must be filed no more than twenty-eight (28) days after the entry of the judgment, and this 28-day deadline cannot be extended. Other motions, including a Rule 60 motion for relief from a final judgment, do not toll the deadline for an appeal.

It is not necessary for Petitioner to obtain a certificate of appealability from this disposition of his Section 2241 Petition. *See Walker v. O'Brien*, 216 F.3d 626, 638 (7th Cir. 2000).

**IT IS SO ORDERED**.

**DATED:  June 4, 2020.**

                                                        *s/ Gilbert C. Sison*
                                                        HON. GILBERT C. SISON
                                                        United States Magistrate Judge