IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| NATHANIEL CLAY, <br> No. 30307-424, <br><br>    Petitioner, <br><br> vs. <br><br> DAN SPROUL, <br><br>    Respondent. | ) <br> ) <br> ) <br> ) <br> ) <br> ) Case No. 3:19-cv-1241-GCS <br> ) <br> ) <br> ) <br> ) |

## MEMORANDUM & ORDER

**SISON, Magistrate Judge:**

Now before the Court is Petitioner Nathaniel Clay's Motion to Reconsider Judgment, filed June 30, 2020.[1] (Doc. 19). The motion invokes Federal Rule of Civil Procedure 59(e) and challenges this Court's June 4, 2020 dismissal of his Habeas Petition. (Doc. 17). Clay is serving a 320-month sentence imposed in November 2010 in the Northern District of Illinois pursuant to a guilty plea agreement. Clay pled guilty to one count of conspiracy to possess with intent to distribute and to distribute controlled substances, and in exchange the Government dismissed a second count as well as its Section 851 Notice,[2] which could have subjected Clay to a mandatory life sentence based on three previous state drug convictions. (Doc. 17, p. 2-3).

---

[1] Clay certified that he submitted his motion for mailing to the Court on June 30, 2020, which is its filing date under the prison mailbox rule. (Doc. 21, p. 5). *See Houston v. Lack*, 487 U.S. 266 (1988); *Jones v. Bertrand*, 171 F.3d 499, 502 (7th Cir. 1999). Therefore, Clay's Motion to Reconsider was timely filed within the 28-day deadline set forth in Rule 59(e).

[2] 21 U.S.C. § 851.

This Court dismissed Clay's Habeas Petition and rejected the argument that his guilty plea was invalid under *Mathis v. United States*, 136 S. Ct. 2243 (2016), *United States v. Elder*, 900 F.3d 491 (7th Cir. 2018), and *Najera-Rodriguez v. Barr*, 926 F.3d 343 (7th Cir. 2019). Clay relied on the aforementioned cases to argue that his Illinois drug convictions no longer met the definition of "felony drug offenses," and thus he never should have been exposed to an enhanced mandatory life sentence. (Doc. 17, pp. 6-11). The Court concluded that Clay's mandatory minimum sentence was not increased by the Section 851 notice because the Government dismissed it. The Court also found that Clay was correctly informed that his sentencing range was from ten years to life and that his plea was not improperly coerced by the threat of a life sentence based on the Section 851 notice. (Doc. 17, p. 10-11).

Rule 59(e) permits a court to amend a judgment only if the movant demonstrates a manifest error of law or fact or presents newly discovered evidence that was not previously available. *See, e.g., Sigsworth v. City of Aurora*, 487 F.3d 506, 511-512 (7th Cir. 2007); *Harrington v. City of Chicago*, 433 F.3d 542, 546 (7th Cir. 2006)(citing *Bordelon v. Chicago Sch. Reform Bd. of Trs.*, 233 F.3d 524, 529 (7th Cir. 2000)).

In his motion, Clay argues that the "plea agreement and resulting sentence are the progenies of a mutual mistake" which "violated due process" and "void[ed] the contract" between him and the Government. (Doc. 19, p. 1). He asserts that the mere filing of the erroneous Section 851 Notice was error and a miscarriage of justice, because the Notice meant that he faced a life sentence. At the time of the plea, both parties assumed that Clay's prior convictions qualified as "felony drug offenses," but after *Mathis* and related

decisions, he claims they no longer do.

In rejecting Clay's Petition, this Court pointed to *Brady v. United States*, which held that a guilty plea made voluntarily and intelligently in light of then-current law does not become invalid when "later judicial decisions indicate that the plea rested on a faulty premise." *Brady*, 397 U.S. 742, 757 (1970); (Doc. 17, p. 11). Clay now argues that *Brady* is inapplicable to his case because *Mathis* did *not* represent a change in the law but is instead based on precedent of more than 25 years. (Doc. 19, p. 4-6). Thus, he argues that the applicable law at the time of his plea (*Taylor v. United States*, 495 U.S. 575 (1990)) "had been misapplied for decades." *Id.* Clay says that under *Taylor*, "it is now clear" that he should never have faced a possible mandatory life sentence. (Doc. 19, p. 6).

If the Court accepts Clay's argument that *Mathis* is not a new case, however, that would mean that Clay could not meet the conditions to bring his claim under the "savings clause," which requires reliance on a new statutory interpretation case that could not have been invoked in his initial Section 2255 motion. His Petition would thus have to be dismissed on that basis. Clay originally invoked *Mathis* as a new statutory interpretation case cognizable in a Section 2241 action. He cannot have it both ways.

Clay's motion also raises *United States v. DeLaTorre*, 940 F.3d 938 (7th Cir. 2019) to support his claim, focusing on the appellate court's use of the past tense when stating that one defendant's prior conviction "*was* not a qualifying felony drug offense." *DeLaTorre*, 940 F.3d at 953 (emphasis added); (Doc. 19, p. 7-8). Notably, *DeLaTorre* was decided on direct appeal, and the Seventh Circuit issued its opinions in *Elder* and *Najera-Rodriguez* while *DeLaTorre* was pending. The direct appeal procedural posture is very

different from Clay's collateral attack.  *DeLaTorre* does not change the fact that the applicable law at the time of Clay's plea agreement supported the parties' conclusion that Clay's prior offenses made him eligible for the mandatory minimum of life.

Clay next takes issue with this Court's conclusion that the mere filing of the Section 851 Notice did not create a certainty that he would be subject to a life sentence. (Doc. 19, p. 8-10, referencing Doc. 17, p. 11).  He argues that if he had not pled guilty and had instead been convicted at trial, he would certainly have been sentenced to life.  He further asserts that the Government's filing of the Section 851 Notice coerced him to plead guilty, was not harmless, and amounted to a miscarriage of justice. (Doc. 19, p. 8-10, 16-22).  Of course, the calculus of whether to take one's chances at trial or enter into a plea that would result in a sentence lower than the maximum is one that any criminal defendant faces when considering a plea offer.  Even if the Section 851 Notice had never been filed, Clay's sentencing range included a possible maximum of life, which provided a strong incentive to accept a plea for a lesser sentence.  In light of this reality, the Court finds unpersuasive Clay's argument that the coercive effect of the allegedly wrongful filing of the Section 851 Notice voided his plea agreement.  As this Court noted (Doc. 17, p. 11), the sentencing court never ruled on whether Clay's prior convictions would count as "felony drug offenses."  While Clay urges that the filing of the 851 Notice affected his substantial rights and cannot be considered harmless, there was no error – harmless or otherwise – on the part of the sentencing court itself.

Clay objects to this Court's point that a defendant's mistake as to his potential sentence does not invalidate a guilty plea (Doc. 17, p. 11), arguing that both he and the

Government were mistaken as to his eligibility for mandatory life. (Doc. 19, p. 12-13). He asserts that this "mutual mistake" provides grounds to invalidate his plea agreement. However, the cases Clay cites do not support this outcome. For example, in *United States v. Barnes*, 83 F.3d 934, 939 (7th Cir. 1996), the defendant was not allowed to withdraw his plea even though he, the prosecution, and the court all mistakenly believed that he would not be subject to a career-offender-enhanced sentence under the United States Sentencing Guidelines. The defendant faced a statutory maximum of life, and the plea agreement provided that his sentence would be determined by the Guideline calculation. The precise length of his sentence was not an essential term of the plea deal, thus a mistake as to the applicable guideline range was not a valid reason to void the contract even though it turned out to be far longer than he anticipated. Clay's situation is analogous – he faced a possible life sentence regardless of whether his prior convictions counted as "felony drug offenses" and the plea agreement left the final sentence determination up to the judge. A mutual mistake as to whether Clay could have been subject to mandatory life – which was not an essential term of the plea agreement – is not sufficient to void the plea.

Clay again protests that he was misinformed about his potential statutory sentence (Doc. 19, p. 13-16), but this Court already determined that he was not. He was told at the change of plea hearing that his sentence could range from ten years to life, and this information was correct. (Doc. 17, p. 10). Clay's assertion that his 26-year sentence is "far greater" than he could have received "without any plea agreement at all" is flatly wrong. (Doc. 19, p. 15).

Clay's motion does not demonstrate any mistake of law or fact, or present any newly discovered evidence, that would entitle him to an altered or amended judgment under Rule 59(e). Upon review of the record, the Court remains persuaded that its dismissal of the Petition was correct. For these reasons, the Motion to Reconsider Judgment (Doc. 19) is **DENIED**.

Under Rule 59(e), Clay's filing of his motion (Doc. 19) suspended the deadline for him to appeal the dismissal of this case. Therefore, if he wishes to appeal the dismissal of his Habeas Petition, his notice of appeal must now be filed with this Court within 60 days of the date of *this* Order. FED. R. APP. PROC. 4(a)(1)(B) and 4(a)(4)(A). A motion for leave to appeal *in forma pauperis* ("IFP") must set forth the issues Petitioner plans to present on appeal. *See* FED. R. APP. PROC. 24(a)(1)(C). If Petitioner does choose to appeal and is allowed to proceed IFP, he will be liable for a portion of the $505.00 appellate filing fee (the amount to be determined based on his prison trust fund account records for the past six months) irrespective of the outcome of the appeal. *See* FED. R. APP. PROC. 3(e); 28 U.S.C. § 1915(e)(2); *Ammons v. Gerlinger*, 547 F.3d 724, 725-726 (7th Cir. 2008); *Sloan v. Lesza*, 181 F.3d 857, 858-859 (7th Cir. 1999); *Lucien v. Jockisch*, 133 F.3d 464, 467 (7th Cir. 1998). It is not necessary for Petitioner to obtain a certificate of appealability from this disposition of his Section 2241 Petition. *See Walker v. O'Brien*, 216 F.3d 626, 638 (7th Cir. 2000).

**IT IS SO ORDERED.**

DATED: July 14, 2020.

Digitally signed by Judge Sison
Date: 2020.07.14 13:02:35 -05'00'

GILBERT C. SISON
United States Magistrate Judge